**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | **OPPOSITION TO** **SEARCH WARRANT** |
| v. | 25-MJ-649 (MJP) |
| I-V SHASKA ZOREZ A/K/A HANS CHRISTIAN PEREZ, | |
| **Defendant.** | |

| | |
|---|---|
| **MOTION BY**: | Jeffrey L. Ciccone, Assistant Federal Public Defender Attorney for I-V Zorez. |
| **DATE, TIME & PLACE**: | December 18, 2025, at 3:30 p.m. before the Honorable Mark W. Pedersen, U.S. Courthouse, Rochester, New York. |
| **SUPPORTING PAPERS**: | Affirmation of Jeffrey L. Ciccone, affirmed on December 10, 2025, and all prior proceedings had herein. |
| **RELIEF REQUESTED**: | An Order granting the relief requested herein. |

Dated:  December 10, 2025
        Rochester, New York

                                              /s/Jeffrey L. Ciccone
                                              Jeffrey L. Ciccone
                                              Assistant Federal Public Defender
                                              28 East Main Street
                                              First Federal Plaza, Suite 400
                                              Rochester, New York 14614
                                              585-263-6201
                                              jeffrey_ciccone@fd.org
                                              Attorney for I-V Zorez

UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA                                    <u>AFFIRMATION</u>

        v.                                                                                       25-MJ-649 (MJP)

I-V SHASKA ZOREZ A/K/A HANS CHRISTIAN PEREZ,

                              <u>**Defendant.**</u>

Jeffrey L. Ciccone, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

1.      I am an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent I-V Zorez.

2.      I am familiar with this case by reasons of my investigation of this matter, conversations with my client and others, and my review of the discovery materials provided to date by the government.

3.      This affirmation is submitted in opposition to the government's application for a warrant to search the Apple iPhone, Model A1661, seized from I-V Zorez on November 4, 2025.

2

## I.  INTRODUCTION

4. On November 14, 2025, I-V Zorez (Zorez) was charged in a criminal complaint. Specifically, the complaint charges Zorez with the knowing and unlawful possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. §922(g)(3).  Docket #1.

## II.  FACTUAL BACKGROUND

5. According to the criminal complaint, in March 2005, Zorez purchased a Mosin-Nagant M44 Carbine rifle from an online firearms broker using her given birthname of Hans Christian Perez.  The following month, Zorez purchased ammunition for the rifle from a different online ammunitions broker.  Docket #1, ¶¶8-9.

6. When purchasing the firearm, Zorez was required to complete the Firearms Transaction Record form.  Questions 21e of that form asks: "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?"  Zorez answered "No" to this question.  Docket #1, ¶¶ 11-12.

7. Question 21f of the Firearms Transaction Record asked: "Have you ever been adjudicated as a mental defective or have you ever been committed to a mental institution?"  Again, Zorez answered "No."  Docket #1, ¶¶ 13-14.

8. Zorez provide her current address on the Firearms Transaction Record form and was issued a National Instant Criminal Background Check System (NICS) number.  On April 2, 2025, Zorez cleared the NICS.  Docket #1 ¶¶ 17-18.  On that same day, she used her New York State Driver's License bearing the name Hans Christian Perez to pick up the firearm.  Zorez signed the Firearms Transaction Record with the name I-V Zorez.  Docket #1, ¶21.

9.      On May 2, 2025, Zorez was issued a New York State Driver's License with the name I-V Shaska Zorez. Docket #1, ¶22. Zorez was issued a new Social Security card with her legally changed name on August 11, 2025. Docket #1, ¶23.

10.     According to the Criminal Complaint, on November 4, 2025, at approximately 8:29 a.m., the Rochester Police Department (RPD) received a call reporting that an Asian male wearing a trench coat was standing on the corner of Park Avenue and South Goodman Avenue in the city of Rochester carrying an antique rifle. Several minutes later RPD received another call indicating that the male had fired the rifle into the air. Docket #1, ¶24.

11.     An RPD Officer and Monroe County Sheriff Deputy responded to the scene within minutes and encountered Zorez with a rifle slung over her shoulder. Zorez was taken into custody and transported to Strong Memorial hospital, where she was placed under Mental Health Arrest (MHA). Docket #1, ¶24.

12.     While in the hospital, Zorez was interviewed by agents from the FBI. According to the agents, Zorez stated that during the summer of 2025 she was having difficulty obtaining prescription medication and began legally purchasing marijuana from local dispensaries. Zorez also stated that she legally purchased the rifle from an online firearms dealer. She further explained that she enjoyed going on walks in a Soviet military uniform. One week prior to her arrest, Zorez went on an evening walk in Soviet uniform carrying the rifle and returned home without incident. One the day of her arrest, Zorez stated that she again went on a walk in Soviet uniform. Upon arriving at the intersection of Park Avenue and South Goodman Street, Zorez made a "distress signal" to the military by firing a round from her rifle into the air. Docket #1 at ¶27.

13. Zorez further explained to the FBI agents that she had never been diagnosed with any sort of mental condition, but that she struggles with anxiety, depression and prior suicide attempts. Finally, Zorez acknowledged having accounts on Facebook, Reddit, Youtube, X and Discord. *See id.*

14. At the time of her arrest, officers conducted a search of Zorez's person. Among other things, Zorez was carrying an Apple iPhone. The government has submitted an application for a search warrant for the iPhone. Offered in support of the application is the affidavit of Federal Bureau of Investigations (FBI) Task Force Officer William Connell, IV. The defense contends that the search warrant should not be issued because the application does not establish probable cause to believe that evidence of the alleged crime will be found on the iPhone.

**The Search Warrant Application Does Not Establish Probable Cause to Believe Evidence of a Crime Will Be Found on Ms. Zorez's iPhone**

15. The Fourth Amendment to the Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* Fed. R. Crim. P. 41.

16. In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement. According to the Court, the issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be

found in a particular place." *Id.* at 238. Additionally, the Fourth Amendment requires that a search warrant "particularly describe[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The reason for this "particularity" requirement is to prevent general searches. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* at 84.

17.    To satisfy the Fourth Amendment, a search warrant must be based upon probable cause to believe a crime has been committed and that evidence of such crime will be found in the particular place to be searched. *See Illinois v. Gates*, 462 U.S. at 238. Here, the affidavit submitted by the government in its application to search Zorez's Apple iPhone presents no specific evidence to suggest that the phone was used to facilitate a crime or that evidence of any crime will be found on the phone. To the contrary, the warrant application submitted by Task Force Officer William Connell includes a recitation of the above facts. Following the factual allegations, Officer Connell states the following:

> Based on my training and experience, and participation in this and other firearms investigations and based upon my discussions with other experienced FBI Agents and state and local law enforcement, I know that possessors of illegal firearms often employ cellular telephones as a means of communicating with each other. Possessors of illegal firearms often utilize cellular telephones to relay a variety of illicit information including, but not limited to, telephone numbers of co-conspirators, digital codes to identify the caller, digital codes to indicate the location of a meeting place, or other information designed to facilitate criminal activity. Possessors of illegal firearms frequently maintain in the memories of their cellular telephones the names, telephone numbers, recorded messages, photographs and other items of information concerning themselves and individuals associated in their criminal

> activities. Possessors of illegal firearms commonly maintain cellular phones and other communication devices in their vehicles and residence that are utilized to further their involvement in illegal firearms possession. People who illegally purchase or possess firearms commonly take, or cause to be taken, photographs/videos of themselves, their associates, their property, of their firearms, and usually maintain these photographs/videos in their residences. These photographs/videos are frequently stored in electronic storage mediums, including but not limited to cellular camera phones, home computers, and computer storage disks.
>
> Based on the fact pattern above, and based on my training and experience, I believe I-V has used the SUBJECT DEVICE to access the social media accounts referenced in the November 7, 2025, interview. I therefore respectfully submit there is probable cause to believe the SUBJECT DEVICE will contain evidence, contraband, fruits and instrumentalities of the TARGET OFFENSE, as further set forth in Attachment B.

Docket #1, ¶¶ 30-31

18.  The majority of Agent Connell's opinion is inapplicable to the case at hand. For example, the opinion includes references to communications with coconspirators and the sale and possession of illegal firearms. The charges against Zorez do not allege an unlawful sale or purchase of a firearm, nor is there any suggestion of coconspirators. To the contrary, it appears undisputed that Zorez purchased the rifle in question from a licensed firearms dealer. The charges allege that Zorez possessed the firearm while being an unlawful user of marijuana.

19.  Agent Connell also opines that Zorez may have used the iPhone to access various social media accounts. However, the search warrant application fails to suggest any specific illegal activity that is alleged to have occurred over any form of social media, or any evidence of a crime that is likely to be found related to those accounts through a search of the iPhone. Agent Connell's opinion about what is likely to be found on Zorez's iPhone could just as easily be applied to any allegations of any crime by any person who happened to be carrying a cellular

phone at the time of arrest. Such broad conclusory allegations cannot overcome the constitutional protections of the Fourth Amendment's particularity requirement.

20. An officer's affidavit in support of a warrant must "establish a sufficient nexus between the criminal activities alleged and the place to be searched." *United States v. Silva*, 146 F.4th 183, 189 (2d Cir. July 24, 2025) (*quoting United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004)). Although the affidavit need not demonstrate probable cause "of the *use* of the property in furtherance of criminal conduct," it must demonstrate "probable cause that the location to be searched contains relevant evidence of the criminal conduct." *Id* at 190 (*quoting United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023); *see also*, *United States v. Santiago*, 135 F.4th 1235, 1241 (10th Cir. April 2025) (finding a lack of probable cause because warrant application did not establish a logical connection between defendant's iPhone and the crime alleged)).

21. Because Agent Connell's affidavit failed to establish that Zorez used her iPhone in connection with the alleged crimes or provided any particular facts upon which to conclude that evidence of the crimes would be found on the iPhone, the government's search warrant application should be denied.

Dated: December 10, 2025
       Rochester, New York

                              Respectfully submitted,

                              /s/Jeffrey L. Ciccone
                            Jeffrey L. Ciccone
                            Assistant Federal Public Defender
                            28 E. Main Street, Suite 400
                            Rochester, New York 14614
                            585-263-6201
                            jeffrey_ciccone@fd.org
                            Attorney for I-V Shaska Zorez